UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMMED SAAD MIAH,

    Plaintiff,                                        Civil Action No. 06-13897

v.                                                HON. GERALD E. ROSEN
                                                  U.S. District Judge
                                                  HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mohammed Saad Miah brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed motions for summary judgment [Docket #15, 18] which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and that Plaintiff's motion be DENIED.

## PROCEDURAL HISTORY

On July 6, 2004, Plaintiff filed an application for DIB, alleging disability as of February 9, 2004 (Tr. 53). After the initial denial of his claim, Plaintiff filed a request for an administrative hearing, held on October 31, 2005 in Detroit, Michigan (Tr. 414).

1

Administrative Law Judge ("ALJ") Philip Simon presided (Tr. 412). Plaintiff, represented by attorney Kenneth J. Kurncz, testified, as did Vocational Expert Diane Regan (Tr. 415-426, 426-431). On January 30, 2006, the ALJ issued a partially favorable decision, finding that although Plaintiff was not currently disabled, he was entitled to a "period of disability and Disability Insurance Benefits" from February 9, 2004 to November 30, 2005 (Tr. 26). On June 28, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review on September 1, 2006.

## BACKGROUND FACTS

Plaintiff, born May 5, 1976, was age 29 when the ALJ issued his decision (Tr. 53). He completed 10th grade and worked formerly as a spot welder, drilling operator, press operator, and general laborer[1] (Tr. 96, 415). Plaintiff alleges disability due to severe back and leg pain as well as stomach problems (Tr. 81-82).

### A. Plaintiff's Testimony

Plaintiff testified that he had completed 10th grade before emigrating to the United States (Tr. 415-416). He stated that he had worked at a plastics company for six and a half years as an assembler before claiming disability on February 9, 2004 (Tr. 416-417). He testified that prior to working at the plastics company he worked as a machine operator and spot welder (Tr. 417-418). He reported worsening back and right leg pain since the work related injury in February, 2004 despite having undergone surgery (Tr. 418-419). He stated

---

[1]However, contrary to his hearing testimony, Plaintiff's application for DIB states that he completed 12th grade (Tr. 86).

2

that he was unable to lift more than four to five pounds, and estimated that he could walk or stand for a maximum of 15 minutes and sit for a maximum of 25 (Tr. 419-420).

Plaintiff testified that he received treatment from Drs. Ho and Batmanghelichi, alleging that although Batmanghelichi currently prescribed Vicodin, Flexeril, and Prevacid, his back pain precluded all work (Tr. 420). Plaintiff, married, with an 18-month old child, reported that he spent his days watching television and napping (Tr. 422). He stated that he was unable to perform any household or childcare chores, spending approximately four to five hours of his waking time each day lying down (Tr. 423).

In response to questioning by his attorney, Plaintiff testified that taking 750 milligrams of Vicodin thrice-daily kept his pain level at a "three" to "five" on a scale of one to 10, adding that without Vicodin, his pain level would be "more than 10" (Tr. 424-425). He reported side effects from Vicodin including digestive problems and fatigue (Tr. 425). He testified further that he avoided taking Flexeril more than once every two days due to the side effects of drowsiness and dizziness (Tr. 425). Plaintiff stated that steroid injections relieved his discomfort for "only a couple of days" (Tr. 425). He testified that he had stopped physical therapy on the advice of a treating physician (Tr. 426).

    **B.    Medical Evidence**

**1.  Treating Sources**

In February, 2004, Plaintiff sought treatment for a work-related injury (Tr. 128). Imaging studies showed "a right paracentral extruded herniation causing central and paracentral canal stenosis," and displacement of "the right L5 nerve root posterolaterally" (Tr. 129). Robert E.M. Ho, M.D., noting that Plaintiff complained of constant back and right leg pain, recorded that his patient "wishe[d] to proceed with surgery since there ha[d] been no response to the conservative management program" (Tr. 153). In July, 2004 Plaintiff underwent a microlumbar laminictemy diskectomy at L5-S1 without complications (Tr. 196-197, 298, 309). Plaintiff was restricted to limited bending, lifting, and twisting (Tr. 318).

In August, 2004, Dr. Ho prescribed Vioxx, noting that Plaintiff reported an improvement of lumbar back symptoms, but a worsening of right lower extremity pain (Tr. 260, 263). In October, 2004, Plaintiff report level "five" pain with medication (Tr. 255).

The same month, Plaintiff's treating physician, Oliva Batmanghelichi, M.D. prescribed physical therapy (Tr. 235-236, 241). Plaintiff's initial therapy assessment found that his functional ability was 44% on the Functional Assessment Scale with pain at a level "six" out of 10 (Tr. 235). In November, 2004, Batmanghelichi composed a summation of Plaintiff's condition since his February 20, 2004 injury, noting that a recent MRI showed the formation of scar tissue which had created "right S1 nerve root sleeve impingement" (Tr. 389). In December, 2004, Dr. Ho noted that Plaintiff's symptoms were "stable," adding that right leg pain had resolved (Tr. 250-251). In January, 2005, Plaintiff was discharged from therapy after failing to attend "two or more scheduled appointments" (Tr. 218). In April, 2005, Plaintiff reported "good results" from Vicodin (Tr. 246). In June, 2005, Plaintiff was

4

evaluated for epidural steroid injections after experiencing recurring right pain (Tr. 243).

October, 2005 treating notes by Dr. Ho indicate that Plaintiff reported level "four" pain when taking Vicodin (Tr. 406). Plaintiff reported further that he could walk a maximum of 10 minutes and sit for no more than 30 minutes (Tr. 406). The notes also state that Plaintiff's "[a]ttention span and concentration [were] normal" (Tr. 407). The following month, Dr. Batmanghelichi completed a Physical Residual Functional Capacity Assessment, finding that Plaintiff was precluded from all lifting, standing, walking, sitting, pushing, and pulling, as well as a complete prohibition on climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 392-392). She also found the presence of manipulative limitations, finding further that Plaintiff should avoid all exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, machinery, and heights (Tr. 394-395). Observing that Plaintiff continued to complain of "chronic lumbrosacral pain," she opined that Plaintiff "is to be considered permanently disabled and unable to work" (Tr. 390).

A November, 2005 MRI of Plaintiff's lumbar spine showed a "definitive" improvement "when compared to a 2/24/04 study," indicating that the "herniation has essentially resolved" (Tr. 404). The same month, Dr. Ho characterized Plaintiff's symptoms of lumbar back pain as "stable," noting further that epidural steroid injections allowed Plaintiff to reduce his pain medications (Tr. 400). He reported that Plaintiff obtained "good results" from Vicodin, experiencing level "four" pain when taking medication (Tr. 400). Although Plaintiff was "unable to complete heel or toe walking secondary to pain," Ho found normal "[b]alance, gait and station" and the absence of muscle atrophy (Tr. 401). He noted

further that Plaintiff demonstrated a normal attention span and concentrational abilities (Tr. 401). Ho reported that Plaintiff "wishes to continue the conservative management program and finish injection therapy" (Tr. 402).

### 2. Consultive and Non-examining Sources

In March, 2004, an assessment performed by Muhammed A. Khalid, M.D. concluded that Plaintiff's back and leg conditions did not meet the 12-month durational requirement for benefits (Tr. 198).

### 3. Medical Evidence Submitted Subsequent to the Administrative Decision

In March, 2006, Dr. Ho completed a one-page medical questionnaire, finding that Plaintiff was precluded from lifting more than five to 10 pounds occasionally and was limited to jobs with a sit/stand option (Tr. 411). Ho also found that Plaintiff should be limited to sedentary work, with only occasional bending or twisting (Tr. 411). He commented that Plaintiff had "tried and failed injection therapy" (Tr. 411).

### C.  Vocational Expert Testimony

VE Diane Regan classified Plaintiff's past work as a spot welder as skilled at the heavy level of exertion; drilling operator as semi-skilled and medium; press operator as skilled and medium; and general laborer, unskilled and medium (Tr. 427).

ALJ Simon, taking into account Plaintiff's age, educational level, and work experience, posed the following hypothetical question:

> "Lifting would be limited to 20 pounds occasionally, 10 pounds frequently, standing and walking about six hours of an eight hour day, sitting about six hours. Should avoid pushing or pulling with the right lower extremity. There

are no manipulative limitations. Individual should not climb ladders, ropes, or scaffolds. Can occasionally climb ramps or stairs. Balance, stoop, kneel, crouch, and crawl occasionally. Should avoid working at heights, around dangerous, moving machinery or other hazards. In your opinion, if those were the only limitations, would the individual be capable of performing any of the past work that you described?"

(Tr. 427).

The VE found that given the above limitations, Plaintiff would be precluded from all past relevant work, but retained the ability to perform the exertionally light, unskilled work of an inspector/checker (18,000 positions in the regional economy), sorter (2,000), and office helper (15,000) (Tr. 428). The VE testified that if the hypothetical question were modified to limit standing and walking to *two*, rather than six hours a day with a sit stand option at the light or sedentary exertional levels, the inspector/checker positions would be limited to 9,000, the sorter to 1,000, and the office helper to 4,000 (Tr. 429-430).

The VE found that if Plaintiff's allegations of limitation were fully credited, he would be precluded from all gainful employment (Tr. 430). She concluded her testimony by stating that her job findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 431).

### D. The ALJ's Decision

ALJ Simon determined that Plaintiff experienced the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, status post lumbar diskectomy, and gastritis/duodenitis, but that the conditions did not meet or medically equal the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 18, 25).

7

Nonetheless, citing the records of Plaintiff's treating physicians, the ALJ found that "from February 9, 2004 to November 30, 2005, [Plaintiff] could not have performed and sustained work at any exertional level, and that he had the residual functional capacity for less than sedentary work" (Tr. 19). The ALJ rejected Dr. Khalid's September, 2004 finding that Plaintiff did not meet the 12-month durational requirement to receive benefits (Tr. 19).

The ALJ found that after November 30, 2005, although Plaintiff continued to experience the severe impairments listed above, he exhibited "tangible, verifiable improvement," noting that Plaintiff required "a lesser quantity of pain medications" and a "decrease in scar tissue" (Tr. 21). He found that after November 30, 2005, Plaintiff retained the following residual functional capacity:

> "to lift and carry 20 pounds occasionally and 10 pounds frequently [with a sit/stand option]. Claimant should avoid hazards (dangerous machinery, unprotected heights, etc.). The claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl"

(Tr. 22). Adopting the VE's job findings, the ALJ found that Plaintiff retained the ability to perform sedentary, unskilled work included jobs as an inspector (9,000 jobs), sorter (1,000), and office helper (4,000) (Tr. 24).

The ALJ determined that although Plaintiff's allegations regarding his condition prior to December 1, 2005 were fully credible (Tr. 19), she discounted his claims of continued disability, citing November, 2005 imaging studies showing a marked improvement and Dr. Ho's finding that Plaintiff's condition had stabilized (Tr. 23). She rejected Dr. Batmanghelichi's November, 2005 assessment on the basis that her finding of "extreme[]"

8

restrictions was "not adequately supported by her own records" (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

9

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Residual Functional Capacity

Plaintiff disputes the ALJ's finding that his disability ended after November 30, 2005. *Plaintiff's Brief* at 6. He contends that the record "contains no specific medical documentation" to support the determination that Plaintiff could perform exertionally light work as of December 1, 2005.[2] *Id.*

A Residual Functional Capacity ("RFC") describes an individual's residual abilities.

---

[2] 20 C.F.R. § 404.1567 (b) states that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

*Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach to viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's conclusion that he could perform exertionally light work with a sit/stand option as of December 1, 2005. An MRI performed in November, 2005 showed "definite" improvement and that the disc herniation had "essentially resolved" (Tr. 404). Dr. Ho noted in November, 2005 that Plaintiff reported level "four" pain with and that his symptoms of lumbar back pain were "stable" (Tr. 400). In October, 2005, Dr. Ho observed that although Plaintiff reported that he was unable to walk for more than 10 minutes at a time, he showed 5/5 strength with the exception of the "right lower extremity" and the absence of atrophy (Tr. 407).

Moreover, although Plaintiff's medical records do not contain the explicit finding that Plaintiff was capable of exertionally light work as of December 1, 2005**,** such a finding can be inferred from Plaintiff's lack of muscle atrophy along with an MRI showing that the disc herniation had been resolved (Tr. 404, 407). Further, the ALJ declined to find that Plaintiff could perform a full range of light work, but instead, adopted Ho's findings that Plaintiff was unable to walk, sit, or stand for prolonged periods by restricting him to jobs with a sit/stand

option (Tr. 22, 406). [3]

## B. Treating Physician

Next, Plaintiff contends that the ALJ conducted an inadequate analysis of Dr. Batmanghelichi's November, 2005 findings. *Plaintiff's Brief* at 9. Citing *Wilson v. Commissioner of Social Security*, 378 F. 3d 541, 544 (6th Cir. 2004), he argues that the ALJ failed to give "good reasons" for rejecting Dr. Batmanghelichi's opinion that he was permanently disabled. *Plaintiff's Brief* at 9; *Wilson,* at 544.

Generally, "the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano,* 613F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). *See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991)( "[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") In *Wilson,*

---

[3] The administrative decision contains the apparently erroneous statements that the positions of "Cloth-stock sorter" (DOT listing 789.687-034), "Warehouse checker" (222.687-010), and "Office helper" (239.567-010) are *sedentary* positions (Tr. 24). In fact, these positions are classified as exertionally *light* by the DOT. However, reversal is not mandated on this basis for two reasons: First, it is possible that the inclusion of a sit/stand limitation (not discussed in the DOT) modified the job requirements to allow Plaintiff to perform those positions at the sedentary level of exertion. Second, the conclusion that Plaintiff was capable of limited range of light work, including these jobs, is consistent with both the limitations found in hypothetical question and the ultimate Residual Functional Capacity, indicating that Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently" (Tr. 22). As discussed above, because substantial evidence supports an RFC including the ability to perform light work, the ALJ's error, if any, is harmless.

*supra,* 378 F.3d at 544, the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

Further, the "ALJ must 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2) (2004). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner of Social Sec.* 482 F.3d 873, 875 (6th Cir. 2007).

Contrary to Plaintiff's claim, the administrative decision contains a thorough analysis of Batmanghelichi's disability opinion. The ALJ, recognizing that Batmanghelichi's findings were entitled to the deference accorded a long-term treating source, explained why he nonetheless found that her conclusions had little value:

> "First, Dr. Batmanghelichi's opinion that the claimant is extremely restricted without further elaboration is not adequately supported by her own records . . . . Second, the limitations placed on the claimant are far in excess of the claimant's own description of his limitations. For instance, there is no objective basis for restricting the claimant's manipulation (reaching, handling, fingering, and feeling). . . . There is also no objective basis for opining that the claimant should avoid all exposure to noise"

(Tr. 22).

More importantly, the ALJ pointed out that Dr. Batmanghelichi's conclusions were

inconsistent with the assessments of Dr. Ho, noting that Ho's "qualifications and credentials make him a specialist, whose opinion is generally given substantial weight." (Tr. 22). Finally, the ALJ observed that Dr. Ho saw Plaintiff "on a more frequent basis" than Batmanghelichi (Tr. 22). The ALJ's analysis not only conformed with the requirements of *Wilson,* but found rightly that Batmanghelichi assessment (including a finding that Plaintiff was completely precluded from *all* walking, sitting, and lifting) lacked credibility (Tr. 392).

### C. Medical Records Post-dating the Administrative Decision

Finally, Plaintiff argues that a remand should be granted because Dr. Ho's March 27, 2006 assessment stands at odds with the ALJ's finding that he could perform light work subsequent to November 30, 2005. *Plaintiff's Brief* at 8.

Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. In *Cotton*, the court held that where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence

14

only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).[4]

### 1. Materiality

Plaintiff's contends that the March, 2006 report is material to his application because it refutes the ALJ's finding that Plaintiff's disability ended on November 30, 2005. However, because Ho clearly states that his later assessment is based on an examination postdating the January 30, 2006 administrative decision (as opposed to a clarification of his records predating the administrative decision), the newer assessment is immaterial to the present application. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). If Plaintiff believes that his disability has recurred as of March 23, 2006 the appropriate remedy is to file a new application for benefits. *Id.* More obviously, remand is inappropriate because the March, 2006 assessment does not find that Plaintiff is disabled but instead states that he should be limited work with a sit/stand option (Tr. 411). If anything, Ho's March, 2006 assessment in part supports, rather than refutes, the ALJ's determination which also limits Plaintiff to sit/stand work.

### 2. Good Cause

Aside from the March, 2006 record's immateriality, Plaintiff has not provided good

---

[4] The fact that Plaintiff has not requested a Sentence Six remand does not prevent the Court from granting such relief *sua sponte*. *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005). However, a review of the newer records indicates that a sentence six remand is not warranted.

cause for the tardy submission of the assessment. ALJ Simon held the record open for sixty days after the October, 2005 hearing to allow Plaintiff to submit additional medical records (Tr. 398). While Plaintiff submitted Dr. Ho's October/November, 2005 treating notes on December 22, 2005, he obtained the assessment in question only after being informed that he had been denied ongoing benefits, apparently seeking to rebut the administrative decision with a newer finding (Tr. 410).[5]

In closing, the Court notes that its conclusion that the administrative decision should be upheld is not intended to trivialize Plaintiff's limitations as a result of his workplace injury. However, based on a review of this record as a whole, it is evident that the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard*

---

[5] Plaintiff's counsel claimed in a December 22, 2005 letter to the ALJ that Ho "does not complete Functional Capacity Evaluation Forms" (Tr. 398). However, in March, 2006, Ho complied with Plaintiff's request to fill out a medical questionnaire (Tr. 411).

*v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 5, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 5, 2007.

s/Susan Jefferson

Case Manager